PAYNTER JEFFERSON,

*vs.*

GEORGE TUNNELL, CHARLES TUNNELL, ISAAC H. HOUSTON
AND JOSEPH KOLLOCK.,

*Sussex, Sept. T.* 1847.

Sureties, not having paid the debt for which they are bound, are not creditors of their principal.

The surety's liability for his principal is not a valuable consideration, as against creditors of the principal, for a bond conditioned for the payment of a sum of money as a debt.

G. T., a guardian, being indebted to his ward, at the solicitation of his sureties, gave his judgment bond to three of them to indemnify them and their co-sureties; and, for the same purpose, assigned to them certain debts, which debts the sureties collected and held for indemnity. *Held,* that the transaction was fraudulent and void, as against creditors of G. T. afterward recovering judgment.

*It seems,* that sureties in administration, testamentary and guardian bonds, having a statutory remedy in the Orphans Court for counter security, cannot seek indemnity in a court of equity.

BILL TO SET ASIDE AN ASSIGNMENT.—This bill was filed by the complainant, for himself and such other creditors of George Tunnell as should intervene. The complainant, on the 1st of January, 1841, had sold and conveyed to George Tunnell certain real estate, for which Tunnell paid in cash $75, and gave his judgment bond for $700, payable, July 1st, 1842. Judgment was entered on the bond, August 18th, 1842. On the 16th of August, 1842, two days before the complainant's judgment was entered, George Tunnell assigned to Charles Tunnell, Isaac H. Houston and Joseph Kollock, who, with nine other persons, were George Tunnell's sureties in certain guar-

dian bonds, all his estate, real and personal, in trust for the indemnity of the sureties, with a provision that any remaining balance should revert to George Tunnell. He also, at the same time, executed to the same persons a judgment bond for $15,000; absolute upon its face, but subject to the same trusts—on which bond judgment was entered, the same day. On the 3d of March, 1843, the assignees, having elected not to hold the real estate under the assignment but to proceed against it under their judgment, reconveyed it to George Tunnell, retaining the personal property. Afterward, the whole of the property which had been assigned, real and personal (including the real estate which the complainant had sold to George Tunnell), was levied upon and sold to satisfy the judgment' for $15,000 ; and the property so sold was chiefly purchased by the assignees, Charles Tunnell, Isaac H. Houston and Joseph Kollock; who also collected and received sundry judgments and other credits to a large amount, which they had taken under the assignment.

The bill charged that the assignment, as also the judgment bond for $15,000, were without consideration, inasmuch as the parties for whose benefit they were executed were not creditors but only sureties who had as yet paid nothing ; and that they were void as against creditors. The bill also charged that, even were the assignees creditors, the assignment and judgment bond were given in contemplation of insolvency and created an illegal preference, contrary to the insolvent laws. It, therefore, prayed an account of the property of George Tunnell received under the assignment and of the money collected under the judgment, together with the rents of the land, &c. Also, the bill prayed a decree for the payment of the complainant's judgment; that the assignment and the judgment given to the assignees in trust might be declared to be fraudulent and void, and the defendants be perpetually enjoined from proceeding under them; also that a reconveyance of the lands might be ordered.

The answer denied the alleged fraud, and insisted that the assignment and the judgment bond for $15,000 executed to indemnify the sureties were legal; that the sureties stood liable for large balances on Tunnell's guardian accounts, and had, since the said assignment was made, paid the sum of $2,897.30; that the assignment and bond were executed while Tunnell was solvent and without any expectation of insolvency. The answer also insisted upon the long delay of the complainant in entering judgment on his bond as a bar to aid in equity.

The cause came before the Chancellor, at the Sept. T. 1847, for a hearing upon the bill, answer, exhibits and depositions.

*McFee* and *Layton*, for the complainant.

*E. D. Cullen,* for the defendants.

JOHNS, JR., CHANCELLOR.—In this case I must decree in favor of the complainant, he being a *bona fide* creditor of George Tunnell, and against the defendants, they not being creditors, but only sureties.

I consider the sureties incapable of taking the bond on which their judgment was entered and the property of the principal, both personal and real, sold by virtue of execution process issued thereon, in payment of a debt claimed as due and payable, to the amount of $15,000, when, as sureties, they have not paid the same or any part thereof; for, until payment, the surety is not a creditor, and there can be no debt due from the principal to his surety; therefore, the simple liability as surety cannot constitute a valuable consideration for a bond conditioned for the payment of a sum of money as a debt. I agree with the case of *Waters vs. Comly,* decided in the Court of Errors and Appeals, 3 *Harring. R.* 117, that a debtor has a right to give his creditor a bond for a debt *bona fide* due or existing

at the time of executing the bond, or to secure the payment of the same by a judgment confessed; but it does not extend to the giving of a bond or confessing of a judgment by a principal to his surety when there is no debt due. This bond, for the want of a valuable consideration, being invalid in relation to the rights of the *bona fide* creditors of the principal, the judgment entered thereon and the execution and sale cannot be, as against creditors, sustained or held in any respect, in equity, as effectual.

I am aware that the liability of a surety constitutes a good and sufficient consideration for a bond of indemnity, with a collateral condition, under which the sureties might secure by judgment a lien on the real estate of the principal, which, on any damage ensuing to the surety, or payment made by him and legally ascertained, might be rendered available; but the fact of the payment of damage would have to be determined, upon breaches assigned, and by verdict or inquisition, before execution could issue against the principal or his property. This mode of securing indemnity to sureties benefits the surety, and never can prejudice the creditor for the payment of whose debt the surety is liable; since the surety can only reach the property of the principal after he has paid the creditor, and thereby, to the extent of such payment, stands in the place of the creditor; and it may also prove beneficial to the creditor; for if a lien be secured by judgment on such bond, so as to bind the land of the principal, and the same be also subject to the lien of subsequent judgments, the creditor might be entitled to obtain the advantage resulting from the priority of liens; and such lien would thereby be applied to discharge the debt of the creditor out of the property of the principal or debtor.

Considering then that these sureties cannot stand upon the bond and the judgment entered upon it, is there such an equity on their part as the Court can regard and

protect, against the property of the principal which has come to their hands ? It does not appear to me that the general equities of sureties are such as to reach this case. After payment, sureties are entitled to relief in equity by contribution from the co-sureties, or after default and when in danger of sustaining loss, they have a remedy by bill filed for indemnity; but the principle of indemnity would not sanction a court of equity in decreeing payment of the debt to a surety, or that the principal should become the debtor of his surety by bond or obligation. Besides, the relief, in a court of equity, of sureties *in administration, testamentary or guardian bonds,* by affording indemnity against the principal, seems to be precluded by the Act for establishing courts of law and equity within this government, Sec. 25, (*Dig. Del. Laws* 103,) which provides, " that nothing herein contained shall give any power or authority to hear, decree or determine in equity any matter, cause or thing wherein sufficient remedy may be had in any other court or before any other magistrate or judicature in this Government, either by the rules of the common law *or according to the tenor and directions of the laws of this Government ;* but that when matters determinable at common law shall be brought before them in equity they shall refer or remit the parties to the common law." Now, we have an Act of Assembly conferring jurisdiction over the matter of counter security by executors, administrators and guardians upon the Orphans Court; and the remedy there provided is summary and in every respect ample, according to the tenor and direction of the laws of this Government. It seems, therefore, a necessary consequence that the Court of Chancery in this State has no power or authority to hear, decree or determine in equity any such matter.

I must consider that the assignment, in view of all the circumstances under which it was taken and abandoned, the reconveyance by the trustees, followed by the giving of

a bond and execution to the same persons, they not being creditors, and the sale and application of George Tunnell's property to the use and benefit of persons not having any debt due, were all fraudulent in respect to the complainant—a *bona fide* creditor of the said Tunnell—as well as in respect to other judgment creditors of Tunnell.

' Let a decree be entered that the assignment, bond and judgment be declared fraudulent and void, as against the complainant and the judgment creditors, and be set aside ; and that the assignees pay into Court for the benefit of the complainant's other creditors who shall come in, $3,098.26, with interest, being the money collected and proceeds of sale of the property of George Tunnell.

This decree was reversed by the Court of Errors and Appeals at the June T. 1849, so far as it held the assignment, bond and judgment of George Tunnell to his sureties to be altogether fraudulent and void. The appellate Court held the assignment, &c., to be valid as against creditors generally, though subject, as to the proceeds of the real estate, to the complainant's lien for purchase money, which his judgment was given to secure. A decree was entered for the payment of the complainant's judgment out of the assigned estate, the residue to be held for the indemnity of the sureties; and any surplus, after such indemnification, to be distributed among the other creditors of Tunnell. 5 *Harring. Rep.* 206.